UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HEATHER PIETZ, o/b/o T.C.E., a minor child,<br><br>                Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant. | CASE NO.   C08-5213KLS<br><br>ORDER AFFIRMING THE COMMISSIONER'S DECISION TO DENY BENEFITS |

Plaintiff, T.C.E., a minor, has, through his mother Heather Pietz, brought this matter for judicial review of the denial of his application for supplemental security income ("SSI") benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13. After reviewing the parties' briefs and the remaining record, the Court hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is five years old.[1] Tr. 53. He has no past work experience. Tr. 23, 76. Plaintiff, through his mother, filed an application for SSI benefits on April 14, 2004, alleging disability as of December 20, 2003, due to a hearing loss in both ears. Tr. 20, 63, 75. His application was denied initially

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

and on reconsideration. Tr. 20, 53-55, 60.  Plaintiff requested a hearing, which was held on November 15, 2006, before an administrative law judge ("ALJ"). Tr. 327.  At the hearing, plaintiff, represented by counsel, appeared, but did not testify. Tr. 327-52.  Plaintiff's mother appeared as well, and testified on behalf of plaintiff. Id.

On January 8, 2007, the ALJ issued a decision determining plaintiff to be not disabled, finding in relevant part as follows:

(1) at step one of the disability evaluation process for determining eligibility for SSI benefits for a minor, plaintiff had not engaged in substantial gainful activity;

(2) at step two of that process, plaintiff had a "severe" impairment consisting of hearing loss; and

(3) at step three, plaintiff's impairment did not meet or equal the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, nor did it functionally equal in severity any impairment listed therein.

Tr. 20-26.  Plaintiff's request for review was denied by the Appeals Council on February 15, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 416.1481.

On April 5, 2008, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. (Dkt. #1-#3).  The administrative record was filed with the Court on July 7, 2008. (Dkt. #10). Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a) the ALJ erred in evaluating the evidence in the record and in finding plaintiff's hearing loss did not functionally equal the criteria of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix; and

(b) the ALJ erred in rejecting the testimony of plaintiff's mother.

The undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and, for the reason set forth below, recommends that the ALJ's decision be affirmed.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  Sequential Evaluation Process for Determining a Minor Claimant's Eligibility for SSI Benefits

For a claimant who is under the age of 18, the Commissioner will consider that claimant disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. To be disabled, therefore, the impairment or combination of impairments must be medically determinable, that is they "must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.927(a)(1).

Notwithstanding the presence of a medically determinable impairment, however, if the claimant is engaging in "substantial gainful activity," he or she will not be found disabled. 20 C.F.R. §§ 416.906, 416.924(a). At step one of the sequential evaluation process, therefore, the Commissioner must determine whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the claimant is not engaging in such activity, the Commissioner then moves on to step two of the evaluation process. 20 C.F.R. § 416.924(a).

At step two of that process, the Commissioner must consider whether the claimant has a "severe" impairment. 20 C.F.R. § 416.924(a), (c). An impairment is not severe if it is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). If the impairment is severe, then, at step three, the Commissioner must determine whether it "meets, medically equals, or functionally equals" any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R. § 416.924(a), (d). If the claimant has such an impairment, and it "meets the duration requirement" noted above, disability will be found. 20 C.F.R. § 416.924(a).

In determining whether a minor claimant is disabled, the Commissioner will consider "all of the relevant evidence" in the record, including information from medical and other sources, such as therapists, parents, teachers and other people the claimant knows. 20 C.F.R. § 416.924a(a). The Commissioner thus

"will not consider any single piece of evidence in isolation" or "rely on test scores alone." 20 C.F.R. § 416.924a(a)(1)(ii). In evaluating the ability to function, the Commissioner looks at whether the claimant can do the activities other children the claimant's age can do, how well the claimant does those activities, and how much help is needed from family, teachers or others. 20 C.F.R. § 416.924a(b)(2)(i).

II. The ALJ's Findings as to the Evidence in the Record and Functional Equivalence Were Proper

    A. Step Three of the Sequential Disability Evaluation Process

At step three of the sequential evaluation process, as noted above, the ALJ is required to evaluate the claimant's impairment or impairments to see if they meet, medically equal, or are functionally equivalent to any of those listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R §§ 416.924(a). The Listings consist of two parts: "Part A," which "contains medical criteria that apply to adult persons age 18 and over," and "Part B," which "contains additional medical criteria that apply only to the evaluation of impairments of persons under age 18." 20 C.F.R. § 416.925(b).

To determine whether a minor claimant has an impairment or impairments that meet any of those contained in the Listings, therefore, Part B is used first. Id. If the medical criteria in Part B do not apply, then the medical criteria in Part A are used. Id. With respect to Part B, "'listing-level severity' generally means . . . 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." Id. Six such "domains" are considered in determining listing-level severity, which are as follows: "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for" oneself; "and (vi) [h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1).

A claimant's impairment or impairments are deemed "medically equivalent" to an impairment in the Listings, "if the medical findings are at least equal in severity and duration" to the listed impairment. 20 C.F.R. § 416.926(a). In making this determination, the Commissioner compares "the symptoms, signs, and laboratory findings" about the claimant's impairment or impairments with "the corresponding medical criteria" for the listed impairment or impairments. Id. If the claimant's impairment or impairments are not described in the Listings, the Commissioner compares the medical evidence in the record with the criteria "for closely analogous listed impairments" to see if that evidence is "at least of equal medical significance to" the listed criteria. 20 C.F.R. § 416.926(a)(2). Medical equivalence, however, must be based only on

the medical evidence in the record, which must "be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.926(b).

If a claimant's impairment or impairments do not meet or medically equal any of those contained in the Listings, the Commissioner then determines whether his or her impairment or impairments functionally equal the Listings. 20 C.F.R. § 416.926a(a). To functionally equal the Listings, the claimant's impairment or impairments "must be of listing-level severity," i.e., they must result either in marked limitations in two domains or an extreme limitation in one domain. Id. In considering whether the claimant's impairment or impairments are functionally equivalent to the Listings, the Commissioner assesses what the claimant is unable to do, has difficulty doing, needs help doing, or is restricted from doing. Id. The Commissioner also "will assess the interactive and cumulative effects" of all of the claimant's impairments. Id.

The Commissioner will find a "marked" limitation in a domain if the claimant's impairment or impairments interfere "seriously" with the claimant's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation also means "a limitation that is 'more than moderate' but 'less than extreme.'" Id. Further, a marked limitation will be found when the claimant has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning" in the particular domain, and the claimant's "day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(d)(2)(iii).

The Commissioner will find an "extreme" limitation in a domain if the claimant's impairment or impairments interfere "very seriously" with the claimant's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation also is one that is "more than marked." Id. As with a marked limitation, an extreme limitation additionally will be found if the claimant has "a valid score that is three standard deviations or more below the mean on a standardized test designed to measure ability or functioning" in the particular domain, and the claimant's "day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii).

In determining whether a claimant has a marked or extreme limitation, the Commissioner "will not rely on any test score alone." 20 C.F.R. § 416.926(e)(4)(i). That is, "[n]o single piece of information taken in isolation" will establish that the claimant has a marked or extreme limitation in a domain. Id. Instead,

1 the Commissioner will consider the claimant's "test scores together with" other information concerning the
2 claimant, such as classroom performance and the observation of others. 20 C.F.R. § 416.926(e)(4)(ii). The
3 Commissioner thus may find there is no marked or extreme limitation, even if the claimant's test scores are
4 at the requisite level, if other information in the record shows that the claimant's "functioning in day-to-
5 day activities is not seriously or very seriously limited." 20 C.F.R. § 416.926(e)(4)(ii)(B).

B. <u>Dr. Grossman and Ms. Welander</u>

At the administrative hearing, which, as noted above, was held on November 15, 2006, the medical expert, Perry Grossman, M.D., a pediatrician, testified that plaintiff's "central problem" was his hearing. Tr. 337. Specifically, Dr. Grossman testified that plaintiff had a "high frequency" hearing loss in the right ear, but his hearing in that ear was normal at the "low frequencies," which are the "speech frequencies," as was his "speech awareness," which is "how loud one has to speak to get him to hear it." Id. His speech awareness, however, was "down" in the left ear. Id. Dr. Grossman further testified that "based on the most recent hearing tests," the hearing loss in plaintiff's "more severe," left, ear, would meet the Listings, but not that in the "better", right, ear. Tr. 339. Given that the determination as to whether the Listings have been met is based on the better ear, Dr. Grossman continued, the hearing impairment was "not so severe" as to meet them. Id.

Dr. Grossman went on to testify that although he had not "had the opportunity to evaluate the most current and the most relevant information" in the record (Tr. 333, 340), plaintiff's motor skills were normal (Tr. 340). Plaintiff's cognitive abilities also were normal, which Dr. Grossman testified was "the most important" domain "of all." Tr. 340-41. In addition, Dr. Grossman testified that while communication was "the most impaired of all of the domains" – wherein the record revealed scores of 1.88 and 1.56 standard deviations in the area of expressive and receptive communication respectively – plaintiff did "produce articulate speech," and his performance in this overall domain was "consistent with the fact that the hearing loss" was "not so severe that it would meet or equal the" Listings. Tr. 340, 342. Dr. Grossman testified that while these two communication areas do not "exactly equal the domains," they are "used to assess" the six domains of functioning, and that "with a very cursory review of a lot of information," this was the way he saw the situation. Tr. 342-43.

In terms of the domain of acquiring and using information, Dr. Grossman testified that although it

was "borderline between less than marked and marked," he would assess it as being marked. Tr. 343. As for the domains of attending and completing tasks, caring for oneself and health and physical well-being, Dr. Grossman testified that he would consider them as being "less than marked." Id. With respect to interacting and relating with others and moving about and manipulating objects, Dr. Grossman testified that plaintiff had "no limitation." Id.

Dr. Grossman testified that he disagreed with the assessment of Claire Welander,[2] a social worker who worked with plaintiff, testifying further in relevant part that:

> . . . When everyone else [in the record] thinks he has no limitation [in the domain of moving about and manipulating objects], how do you rate it as extreme is a little problematic to me. Attending and completing tasks, same thing. Three year olds you don't expect them to hang around doing anything for very long anyway and acquiring and using information, he already has good receptive and expressive skills, so that's certainly not extreme. So I have a lot of difficulty accepting the conclusions of this. I did look through this and I thought, wait a minute, this really is a very extreme assessment, so I don't think that we can consider this reliable. You know, all nonmedical information is useful. It's all looked at, but it's not all reliable.

Tr. 346. In terms of the record he considered, Dr. Grossman went on to testify that:

> . . . A lot of the information that I reviewed was protective or items that they expected the child to do. When we're doing disability cases, we are interested in current functioning, not expected functioning at some time in the future. That's important, but that's not important in the adjudicative process. In the adjudicative process, all we can assess is current and past functioning.

Tr. 346-47.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

---

[2] In late September 2006, Ms. Welander wrote that plaintiff had a "moderate to severe bi-lateral hearing loss," which resulted in "slow" speech acquisition, and a "severe" communication delay. Tr. 128. She opined that plaintiff had an extreme limitation in the domains of acquiring and using information, attending and completing tasks and moving about and manipulating objects, and a marked limitation in the domain of interacting and relating with others. Id. In terms of the domain of moving about and manipulating objects, Ms. Welander more specifically wrote that plaintiff's hearing loss caused him "to be extremely impulsive and not understand the social cues and cautionary rules to stay safe," and that he was "not able to comply or respond to safety commands." Id. In regard to the domain of attending and completing tasks, Ms. Welander stated that plaintiff required "additional processing time to make sense of" information. Id. In addition, with respect to the domain of acquiring and using information, Ms. Welander commented that:

> [Plaintiff] is a 35 month old boy functioning at a 20 month level for expressive speech. He has a 35% delay and a score of –1.88 standard deviations below the mean for children his age. His receptive language scores are also significantly delayed; he functions at [sic] 25 month level, and has a 19% delay, with a standard deviation score of –1.56. His delays take on even more significance when we understand that peers his age will be able to take in more information and understand spoken commands with more competence than [plaintiff]. As [plaintiff] grows, the gap will widen. He will require specialized instruction, speech therapy and cognitive therapy with the Vancouver School District in Special Education and the Washington School for the Deaf.

Id.
REPORT AND RECOMMENDATION
Page - 7

medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion

may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In determining whether plaintiff's hearing loss was functionally equivalent to the criteria of any of the impairments contained in Listing 102.08(A) (hearing impairments for children below five years of age), the ALJ stated in relevant part as follows:

> There is evidence in support of the child's disability claim which both the undersigned and the medical expert reviewed. Upon review, the undersigned finds these records to be unpersuasive. As raised by claimant's counsel, the Director of Early Childhood Special Education at the Pride for Kids Center [Ms. Welander's] letter dated September 28, 2006 stated her belief that the claimant is significantly limited in his ability to function (Ex.12E). The director's opinion is not consistent with the claimant's test results and is also flawed by its exaggeration of current and projected ramifications of the claimant's undisputed hearing loss. For example, she believes that the child is "extremely" limited in his ability to move about and to manipulate objects. Written observations of the child show his unlimited ability to play, to run, to dress himself (Ex.9F/167,164). Within this domain the director confuses cognitive limitations with manual limitations. She cites problems with impulsivity and understanding and also labels in the domain of acquiring and using information as the child having extreme limitations. On the contrary, the claimant's cognitive functioning is normal for his age.
>
> Having said this, the undersigned does not dispute the claimant's need for early intervention through head start and the Pride program due to his hearing loss. Yet, the admission standards to these programs are not the same as the requirements for an individual to be found disabled and entitled to social security benefits. Whereas, reviewing pediatrician Dr. [Nevine] Makari understood and correctly applied the functional equivalence domain standards (Ex.7F). In his expert opinion, based on a November 15, 2004 review of the claimant's records, the child claimant had no limitation in four areas of functioning, and a less than marked limitations in the remaining two areas: moving about and manipulating objects; and in his health and physical well-being.
>
> Based on the above treating specialists' observations and the medical expert's testimony at the hearing, the undersigned finds that the claimant's functioning in terms of the six domains: (1) moderately limited in acquiring and using information; (2) less than moderate in attending and completing tasks; (3) is unlimited in interacting and relating with others; (4) is unlimited in moving about and manipulating objects; (5) less than moderately limited in caring for himself; and (6) is less than markedly limited in his health and physical well-being. . .
>
> Accordingly, because the child claimant does not have an impairment or combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, his hearing loss does not equal Medical Listing 102.08(A).

Tr. 25.

In challenging the above findings, plaintiff first argues the ALJ erred in relying on the testimony of Dr. Grossman – and on two audiology reports from in early and mid-September 2005, the latter of which

1 Dr. Grossman based in part his testimony – to find his hearing loss to be minimal in his right ear. See Tr.
2 24, 313-14. Plaintiff asserts the reliability of the hearing tests conducted then was only fair, thus implying
3 reliance on that test by Dr. Grossman was improper. See id. But it is not clear from the latter report that
4 the "fair" test results were considered unreliable.[3] In addition, presumably Dr. Grossman took this factor
5 into account when he reviewed the test results, or at least there is no indication he was not aware of it, nor
6 is there any evidence in the record to show he was unqualified to make a judgment as to the
7 trustworthiness of those results. To the extent the report's validity was at issue, furthermore, it is solely
8 the ALJ's duty to resolve questions of credibility in regard to the medical evidence in the record. The
9 undersigned therefore cannot say the ALJ was remiss in finding the mid-September 2005 hearing test
10 results reliable in this case, particularly in light of the fact that Dr. Grossman did so too.

11 Plaintiff notes that bilateral hearing aides were recommended in early October 2005. See Tr. 312.
12 While true, this recommendation alone does not demonstrate any particular limitations in his hearing that
13 significantly affect any of the six domains of functioning. Plaintiff further notes Dr. Grossman admitted
14 only being able to conduct a "cursory" review of the medical and other evidence in the record. There is
15 nothing to indicate, though, that while a more thorough review of the record may have been more
16 desirable, Dr. Grossman's evaluation thereof was inaccurate or necessarily unsupported by substantial
17 evidence. In other words, although plaintiff may have preferred Dr. Grossman had taken more time to
18 review the record, he has not shown that fact in itself resulted in error.

19 Next, plaintiff argues the ALJ failed in his duty to fairly and fully develop the record by not having
20 ordered a report from a hearing test plaintiff's mother testified at the hearing had been scheduled for early
21 December. See Tr. 336. The ALJ does have the duty "to fully and fairly develop the record and to assure
22 that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)
23 (citations omitted). However, it is only where the record contains "[a]mbiguous evidence" or the ALJ has
24 found "the record is inadequate to allow for proper evaluation of the evidence," that the duty to "conduct
25 an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453,
26 459 (9th Cir. 2001). Once more, plaintiff has not come forth with any evidence to show this scheduled

27
28    [3]The audiology report from early September 2005, did contain boxes that were checked indicating the hearing test results for both ears were "unreliable and/or incomplete (Tr. 314)," but those same boxes were not checked on the mid-September 2005 audiology report (Tr. 313).

REPORT AND RECOMMENDATION
Page - 10

1  hearing test would have established any greater hearing loss – or greater functional limitations stemming
2  therefrom – than the mid-September 2005 test did. Indeed, plaintiff himself apparently never provided the
3  ALJ or the Appeals Council with a copy of that test.

4  Plaintiff also takes issue with the ALJ's statement that contrary to the opinion of Ms. Welander, the
5  annual functional evaluation conducted by her agency repeatedly described his present level of functioning
6  as being age appropriate. See Tr. 24. But that report, which was issued in late July 2006, indicates that out
7  of seven distinct functional areas set forth therein, plaintiff did not continue to demonstrate developmental
8  delay in five of them. See Tr. 239-42. In addition, in a subsequent developmental report her agency issued
9  in early August 2006, and which plaintiff points to as well, while certain developmental delays were noted,
10 in half the functional areas addressed, no additional services were found to be needed at the time. See Tr.
11 234-37. Even if the ALJ may have overstated the case somewhat here, he correctly did point out several
12 major inconsistencies between the functional limitations noted by Ms. Welander and the objective
13 evidence in the record concerning those limitations.

14 For example, although Ms. Welander found plaintiff to have been extremely limited in his ability to
15 move about and manipulate objects, written observations of him made by others who treated him, show a
16 much less restricted ability in that functional domain. See Tr. 185, 192, 228-29, 237, 242, 262-64, 278-84,
17 286, 291, 295-96, 299, 301-03, 305-09, 311. The ALJ also was not remiss in finding the record indicated
18 plaintiff's cognitive abilities to be largely normal, again contrary to the opinion of Ms. Welander. See Tr.
19 231, 234, 257, 263.

20 Plaintiff points to one particular report in the record that noted delays in his functioning of 7% to
21 35% below "age appropriate scores." See Tr. 226-29, 236-37. None of these delays, however, rise to the
22 level of disability, at least in terms of the functional domains used to determine disability. In addition,
23 only in two of the areas tested in this report – that of expressive and receptive communication (Tr. 226-27,
24 236) – produced scores that came close to being two standard deviations below the mean needed to
25 establish a marked limitation in a functional domain. Even then, both of the specific areas of functioning
26 tested would appear to fall into only one of the recognized functional domains, i.e., that of interacting and
27 relating with others. Thus, although the ALJ may have been incorrect in noting plaintiff was age
28 appropriate in all areas, plaintiff also is incorrect in arguing the objective test results show an impairment

in functioning indicative of marked or extreme limitations in any of the functional domains.

The undersigned, therefore, further rejects plaintiff's contention that the ALJ misread or incorrectly evaluated the findings of Ms. Welander. As noted above, while the functional testing conducted by her agency did find developmental delays, the delays found did not rise to the level considered disabling by the Commissioner, and certainly do not support the marked and extreme limitations Ms. Welander concluded plaintiff had. That the gap in functioning in plaintiff may widen in the future, as opined by Ms. Welander as well, also is not an appropriate consideration in determining disability here. That is, as Dr. Grossman observed in his testimony, the disability determination in Social Security cases is based solely on evidence of current or past impairments and limitations in functioning.

C. Dr. Cooper

Plaintiff next argues the evidence he submitted for the first time to the Appeals Council undermines further the ALJ's rejection of Ms. Welander's findings and opinion. The undersigned disagrees. Relying on the Ninth Circuit's decision in Ramirez v. Shalala, 8 F.3d 1449 (9th Cir. 1993), plaintiff argues because evidence submitted for the first time to the Appeals Council is part of the administrative record, the Court may review it to determine whether the ALJ's decision is supported by substantial evidence.[4] Id. at 1451-52. Defendant argues, however, that this Court has no jurisdiction to review the Appeals Council's denial of plaintiff's request for review. See Mathews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) (noting that no statutory authority, source of district court's review authority, authorizes district court to review Appeals Council decisions to deny review).

Because no federal court jurisdiction exists, defendant asserts this Court's review of new evidence

---

[4] In Ramirez, the Ninth Circuit found specifically as follows:

Although the ALJ's decision became the Secretary's final ruling when the Appeals Council declined to review it, the government does not contend that the Appeals Council should not have considered the additional report submitted after the hearing, or that we should not consider it on appeal. Moreover, although the Appeals Council "declined to review" the decision of the ALJ, it reached this ruling after considering the case on its merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to "provide a basis for changing the hearing decision." For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.

Id.; see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing to Ramirez to find that additional materials submitted to Appeals Council properly may be considered, because the Appeals Council addressed them in context of denying claimant's request for review); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (again citing to Ramirez in holding that evidence submitted to Appeals Council is part of record on review to federal court).

REPORT AND RECOMMENDATION
Page - 12

submitted to the Appeals Council is governed by the requirements of sentence six of 42 U.S.C. § 405(g). Sentence six provides in relevant part that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Plaintiff counters that he has not requested a sentence six remand, but is merely arguing, as noted above, for a reversal of the ALJ's decision pursuant to Ramirez because it is not supported by substantial evidence. However, plaintiff also has requested in the alternative that the Court reverse the ALJ's decision and remand this matter for further administrative proceedings. Thus, although analysis under both standards is required here, the undersigned finds the evidence submitted for the first time to the Appeals Council supports neither request.

The evidence plaintiff relies on here comes from G. Michael Cooper, M.D., who apparently is his primary care physician. See Tr. 324. That evidence consists of a "functional equivalence evaluation" form from plaintiff's attorney, in which Dr. Cooper on June 18, 2007, checked spaces to indicate plaintiff has: extreme limitations in the domains of acquiring and using information, attending and completing tasks and moving about and manipulating objects; marked limitations in the domains of interacting and relating with others and caring for himself; and a less than marked limitation in health and physical well-being. Tr. 322-23. Dr. Cooper also wrote in the "additional comments" section that plaintiff had an "[e]xtreme limitation in" the "seventh domain of speech." Tr. 323.

Also submitted for the first time to the Appeals Council is a letter written by Dr. Cooper, dated the same date as the functional equivalence evaluation form, in which he states that he "strongly" concurred with Ms. Welander's "findings of extreme degrees of limitation in various domains of function including acquiring and using information, attending and completing tasks, moving about and manipulating objects, as well as [sic] marked limitation in the domain of interacting and relating to others." Tr. 324. He states in addition that his "impression was re-enforced at the time of" his "most recent office visit" with plaintiff on May 9, 2007. Id. Finally, Dr. Cooper "strongly" recommended that the denial of plaintiff's application for Social Security disability benefits be reconsidered, as in his opinion, plaintiff had "clearly" met the "qualifications", as he understood them, "for full Social Security disability on the basis of his permanent congenital bilateral hearing loss." Id.

First, in terms of plaintiff's request that the Court reverse the ALJ's decision on the basis that Dr. Cooper's opinions show that decision is not supported by substantial evidence, the undersigned finds that had the ALJ been able to consider them, he would have given little, if any, weight thereto. Nor would the ALJ have been remiss in doing so. The functional equivalence evaluation form Dr. Cooper completed is barely more than a "check-off" form, with respect to which the Ninth Circuit has noted its disapproval. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports). That form also is wholly conclusory and contains no objective medical findings to support the marked and extreme limitations noted therein.[5] See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if brief, conclusory, and inadequately supported by clinical findings or by record as whole).

The letter also is similarly deficient. Dr. Cooper does reference an examination of plaintiff that he states was performed in early May 2007, but once more he provides no progress notes or clinical findings to support his statement that it reaffirmed his concurrence with the marked and extreme limitations found by Ms. Welander. Nor is there any indication in either of the documents provided by Dr. Cooper as to how long or how often – or, indeed, in exactly what capacity – he has treated plaintiff. Thus, it is questionable at best to give Dr. Cooper the benefit of the deference befitting a treating physician. In addition, although Dr. Cooper states he believes plaintiff is disabled based on his understanding of the qualifications one must meet to receive disability benefits, it is not clear what his "understanding" of those qualifications are, and again he does not explain how he came to this conclusion or on what information he based it. Even more importantly, however, is that this ultimate determination is solely the province of the ALJ. See Magellanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (ALJ may decline to accept even treating physician's opinion regarding ultimate issue of disability if supported by record).

As for whether Dr. Cooper's opinions support remand for further administrative proceedings under sentence six, the undersigned finds for defendant here as well. Before this Court may remand this case for further consideration under sentence six, plaintiff first must show that the additional evidence he submitted

---

[5] The undersigned does recognize that Dr. Nevine Makari's evaluation discussed below, upon which the ALJ relied in part to find him not disabled, also consisted of a check-the-box type of form. It is clear, however, that Dr. Makari's assessed limitations were based on an evaluation of the evidence existing in the record at the time. As explained below, it is not at all clear on what Dr. Cooper based his opinions. In addition, also as explained below, the ALJ did not err in finding the limitations found by Dr. Makari to be consistent with the evidence as a whole concerning plaintiff's functional limitations.

for the first time to the Appeals Council is "new" and "material", and that he had "good cause" for not submitting it earlier. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (applying standard set forth in 42 U.S.C. § 405(g)). To be material, "the new evidence must bear 'directly and substantially on the matter in dispute.'" Id. (citation omitted). The claimant, furthermore, must demonstrate a "reasonable possibility" that the new evidence "would have changed the outcome of the administrative hearing." Id. at 462 (citation omitted). To demonstrate "good cause," the claimant must show the new evidence "was unavailable earlier." Id. at 463. The good cause requirement will not be met by "merely obtaining a more favorable report once his or her claim has been denied." Id.

While the material submitted by Dr. Cooper may be "new" in that it had not been presented before, and although it does bear directly on the matter in dispute here, for the reasons discussed above, plaintiff has not demonstrated a reasonable possibility that it would have changed the outcome of the decision in this case. As explained above, Dr. Cooper's findings and opinions are unsupported by objective or clinical findings and lack other indices of reliability – such as consistency with other reliable evidence in the record – and thus carries little, if any, weight. As such, it is highly unlikely that the ALJ would have come to a different conclusion regarding plaintiff's disability status had he considered that evidence. Plaintiff also has not shown good cause here. That is, he has not come forth with any explanation as to why he could not have obtained and then submitted to the ALJ the opinions of Dr. Cooper earlier. Indeed, those opinions appear to be much more in the way of an attempt to introduce a "favorable report" after plaintiff's claim already had been denied.

D. Dr. Makari

Plaintiff also criticizes the ALJ for not adopting all of the functional limitations found by Nevine Makari, M.D., one of the non-examining consulting physicians in the record. In mid-November 2004, Dr. Makari completed a childhood disability evaluation form, in which he found plaintiff to have a less than marked limitation in the domains of moving about and manipulating objects and health and physical well-being, and no limitations in any of the other four domains. Tr. 219. As noted above, the ALJ found that in contrast to Ms. Welander, Dr. Makari "understood and correctly applied the functional equivalence domain standards" based on his review of plaintiff's records. Tr. 25. Plaintiff argues the ALJ erred in not adopting the two less than marked limitations. But this error, to the extent it is error, is harmless,

considering that to be found disabled, there must be at least a marked limitations in two domains of functioning. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

Plaintiff further argues the ALJ's reliance on Dr. Makari's findings should be deemed improper, as those findings were formed in 2004, when plaintiff was only 11 months old. Be that as it may, plaintiff, as discussed above, has failed to show the objective evidence in the record demonstrates greater limitations in the six functional domains recognized by the Commissioner, than those found by Dr. Makari or adopted by the ALJ. Likewise, the fact that Dr. Makari did not have the benefit of the hearing test results obtained in 2006, alone is not a significant factor. First, as discussed above, Dr. Cooper agreed with Dr. Makari that plaintiff had a less than marked limitation in the domain of health and physical well-being, and he further found no limitation in the domain of moving about and manipulating objects, despite having reviewed the same hearing test results. Tr. 343. Second, the hearing test results themselves do not translate into or show the presence of specific functional domain limitations. Thus, although it is possible, as plaintiff states, that Dr. Makari's findings are of only limited value, it would not be for the reasons he puts forth.

E. Other Considerations

Plaintiff also argues he satisfies the functional equivalency requirements for a disability finding, because in early August 2006, when he was 31 months old, he was functioning at the age of a 19-month old in the area of self-help, and as a 20 month old in the area of expressive language. See Tr. 225. These areas, plaintiff asserts, arguably translate into the domains of acquiring and using information and caring for oneself, and thus would render him disabled due to marked limitations in two domains. In addition, plaintiff points to functional testing performed in late October 2005, which showed scores of more than two standard deviations in the functional areas of adaptation and expressive communication. See Tr. 257-58. Plaintiff's argument, however, is based on a flawed reading of the record and of the Social Security regulations governing the six domains of functioning.

The Social Security regulations do provide that for a child who has "not attained age 3," a marked limitation equates to "functioning at a level that is more than one-half but not more than two-thirds" of his or her chronological age," but only if "there are no standard scores from standardized tests" in the record. 20 C.F.R. § 416.926a(e)(2)(ii). Here, the record does contain such scores, but those scores, as discussed

above, did not rise to the level of "at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). Accordingly, the specific chronological age at which plaintiff has been noted to be functioning, may not alone be used to determine functional equivalency.[6] In regard to those standard scores plaintiff points to in the areas of adaptive and expressive communication functioning which were noted by Ms. Welander to be more than two standard deviations below the mean, the undersigned disagrees that they equate in this case to marked limitations in two domains.

As noted by plaintiff, the areas of functioning that have been described and tested in the record do not exactly correlate with the six domains of functioning identified in the Social Security regulations. But they do, also as noted by plaintiff, arguably translate into one or more of those domains. Plaintiff does not state with which two domains the areas of adaptive and expressive communication functioning equate. It is conceivable that the area of adaptive functioning falls within the domain of caring for oneself. See, e.g., Tr. 257. The area of expressive communication functioning also seems most closely equated to the domain of interacting and relating with others. Dr. Grossman, however, found plaintiff to have no limitation in the latter domain, while he found only a less than marked limitation in the former. Tr. 343. In addition, as Dr. Grossman testified, it is difficult to understand the marked and extreme limitations noted by Ms. Welander, when no other reliable source in the record appears to have so found. As discussed above, the ALJ did not err in adopting Dr. Grossman's testimony over the findings of Ms. Welander. It must be noted as well that further functional testing conducted both prior and subsequent to that performed in late October 2005, fails to reveal scores of at least two standard deviations in those areas. See Tr. 227, 239, 241, 262-63.

Lastly, plaintiff argues that even if a disability finding is determined to be unwarranted here, there is no substantial evidentiary support for the ALJ's functional equivalency decision, because Dr. Grossman testified that the functional test results in the record do not exactly correlate to the functional domains used by the Commissioner. As such, plaintiff asserts, further development of the record by an expert qualified to translate those results into the proper domains of functioning is necessary. The undersigned disagrees. While, as discussed above, the areas of functioning for which test results are available in the record do not

---

[6] Indeed, as noted above, in determining functional equivalency, the Commissioner "will not consider any single piece of evidence in isolation," but will consider "all of the relevant evidence" in the record. 20 C.F.R. § 416.924a(a)(1)(ii).

1 exactly mirror the domains described in the Social Security regulations, those areas are fairly clear and
2 thus can be translated into the most closely analogous functional domains. Indeed, this is what plaintiff
3 himself argued previously. He cannot have it both ways here. The undersigned thus finds further
4 development of the record concerning this issue is not needed.

5 III.   The ALJ Did Not Err in Rejecting the Testimony of Plaintiff's Mother

6 Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into
7 account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to
8 each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount lay
9 testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.
10 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In
11 rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons"
12 for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to
13 those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ
14 also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

15 With respect to the testimony plaintiff's mother provided at the hearing, the ALJ found specifically
16 in relevant part as follows:

> . . . At the hearing, his mother testified to developmental delays from her son's hearing loss. Specifically, she testified to her son having no sense for safety, to being impulsive, and to being unable to walk until age 2. The claimant's mother also described her son as more out of control, having a harder time getting along with other children, and in general not paying attention due to his hearing loss. The written records do not endorse these limitations and a number of the claimant's limits may simply be age related. At the time of the hearing, the claimant is within a few weeks of his 3 year old birthday. One has to wonder how many three year olds actually pay attention

22 Tr. 23. Plaintiff argues, however, that the ALJ merely stated in a conclusory fashion that the statements of
23 his mother "concerning the intensity, persistence and limiting effects of" his symptoms were "not entirely
24 credible." Tr. 25. While the ALJ did state this, he did so only after providing the above specific reasons
25 for discounting her testimony, and after reviewing the medical and other evidence in the record. See Tr.
26 23-25. Plaintiff also argues that contrary to the ALJ's statements, the reports from Ms. Welander and Dr.
27 Cooper, along with the other evidence in the record concerning his functioning corroborates the concerns
28 expressed by his mother. But as discussed above, the ALJ did not err in evaluating the medical and other

REPORT AND RECOMMENDATION
Page - 18

evidence in the record that was before him, and plaintiff has failed to demonstrate the evidence provided by Dr. Cooper warrants remand or reversal. Accordingly, the ALJ did not err here.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff was not disabled. Accordingly, the ALJ's decision hereby is AFFIRMED.

DATED this 16th day of March, 2009.

Karen L. Strombom
United States Magistrate Judge